IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THOMAS JACKSON,<br><br>    Plaintiff and counterclaim defendant,<br><br>vs.<br><br>SMART-FILL MANAGEMENT GROUP, INC.,<br><br>    Defendant and counterclaimant,<br><br>and<br><br>ASTRUP DRUG, INC., and WILLIAM BRAZELL,<br><br>    Defendants. | 4:20-CV-3019<br><br>MEMORANDUM AND ORDER |

    This dispute arose after plaintiff Thomas Jackson terminated his employment with defendants Smart-Fill Management Group, Inc. and Astrup Drug, Inc.[1] and began developing a pharmacy management benefits company, which could compete with Smart-Fill. *See* filing 1-1 at 5-6. Jackson claims, in

---

[1] Defendant Astrup Drug has alleged in its answer that it never employed Jackson and is therefore not a proper party. *See* filing 9 at 2-3. The employment agreement, however, appeared on Astrup Companies letterhead and was signed by William Brazell as President of Astrup Company. Filing 1-1 at 11-12. And to date Astrup, has not filed any motion premised on being an improper party. So, for the purpose of this motion, Smart-Fill and Astrup will be described as Jackson's employers.

part, that a Non-Competition and Non-Solicitation Agreement (filing 1-1 at 18-21) (hereinafter "Confidentiality Agreement") he entered into with Smart-Fill is unenforceable as a matter of law. *See* filing 1-1 at 7-8. Smart-Fill counterclaims, asserting that Jackson breached the Confidentiality Agreement by taking member lists and pricing information and using them for his own benefit. *See* filing 9 at 9-10.

This matter is before the Court on Jackson's motion (filing 11) to dismiss Smart-Fill's counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the Court will grant Jackson's motion.

## I. BACKGROUND

Smart-Fill is a "Group Purchasing Organization" for over 600 independent pharmacies (known as members) in 17 states, including Nebraska. Filing 9 at 8. In other words, Smart-Fill negotiates with large pharmaceutical suppliers on behalf of its members as a group to get better prices. *See* filing 9 at 8. In the early 2000s,[2] Smart-Fill hired Jackson to solicit, serve, and retain members for Smart-Fill's network. *See* filing 1-1 at 3; filing 9 at 8. And in July 2019, Jackson and Smart-Fill entered into a two-year employment agreement (filing 1-1 at 11-17) whereby Jackson would act as an Outside Sales Representative working from his home in Columbus, Nebraska, and serve a "defined territory of existing customers as defined on [Jackson's] commission schedule." Filing 1-1 at 11-12. The employment agreement was in part conditioned on Jackson signing the Confidentiality Agreement. Filing 1-1 at 11; *see also* filing 1-1 at 4, filing 9 at 3.

---

[2] Jackson alleges he started in about 2001 (filing 1-1 at 3), while Smart-Fill alleges he started in 2004 (filing 9 at 8). Jackson's exact start date is immaterial to this motion.

At the beginning of October 2019 Smart-Fill allegedly changed Jackson's job description and territory, from serving mostly existing members in Nebraska to developing new members in Kansas and Oklahoma. Filing 1-1 at 5. According to Jackson, this was a breach of the employment agreement and would have substantially reduced his commission compensation for "the foreseeable future." Filing 1-1 at 5. Jackson allegedly raised his concerns with Smart-Fill and asked that the employment agreement be honored, but Smart-Fill stood by its decision. *See* filing 1-1 at 5; filing 9 at 3-4. So, on October 3, 2019, Jackson resigned. Filing 1-1 at 5.

Since resigning, Jackson has been developing a pharmacy management benefits company, which he says "may be competitive with some of the services and products offered by Smart-Fill." Filing 1-1 at 6. Jackson alleges that the noncompete provisions of the Confidentiality Agreement are unenforceable. *See* filing 1-1 at 7-8. Smart-Fill, however, alleges that Jackson had access to proprietary confidential information during his employment, including customer, product, pricing, and financial information, which he is now using to develop his new business. *See* filing 9 at 8-10. In particular, Smart-Fill alleges that "on numerous occasions prior to his resignation," Jackson e-mailed member lists and pricing information to his personal account and third parties outside Smart-Fill. Filing 9 at 9-10.

So, Smart-Fill counterclaimed against Jackson for (1) breach of contract, (2) common law and statutory misappropriation of confidential material, (3) breach of the Nebraska Uniform Deceptive Trade Practices Act, (4) breach of the duty of loyalty, and (5) unjust enrichment. Filing 9 at 10-14. Jackson now moves to dismiss Smart-Fill's counterclaim in its entirety. Filing 11.

- 3 -

## II. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The Court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

### III. DISCUSSION

Jackson argues, and the Court agrees, that all of Smart-Fill's theories of recovery rest on two premises: 1) that its "confidential information" is protected by law, and 2) that Jackson impermissibly took, retained, and/or used that information. *See* filing 12 at 6. But Smart-Fill has not pled facts to support either of those inferences.

Smart-Fill relies heavily on a single allegation in its counterclaim that Jackson sent emails with member lists and pricing information to his personal account and unnamed third parties. *See* filing 9 at 9-10. However, as Jackson points out, Smart-Fill does not provide any details as to when these e-mails were sent. *See id.*, filing 12 at 9. Dates are particularly relevant to Smart-Fill's breach of contract claim, given that Jackson was only subject to the Confidentiality Agreement during the last two months of his approximately 15-year employment. *See* filing 9 at 8-10. Nor does Smart-Fill provide any particulars regarding the alleged number of emails, the context in which they were sent, to which third parties, or any facts which may allow the Court to infer that the messages were sent improperly. *See id.* Without more than an unadorned accusation that Jackson misused the information, Smart-Fill has not met its burden to plead *facts* which, accepted as true, establish a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678.

Smart-Fill also relies on paragraph 19 of Jackson's complaint which alleges that he is developing a pharmacy benefits company which "may be competitive with some of the services and products offered by Smart-Fill." *See* filing 9 at 10, filing 1-1 at 6. However, the Court does not view this allegation as the smoking gun Smart-Fill treats it as. First, Jackson is *developing* a company that *may* be competitive. And as a matter of law, Jackson can think about competing with Smart-Fill all he wants. So, to the extent that Smart-

Fill's claims rely on Jackson *opening* a business that is *actually* competitive, those claims have not yet accrued. *See, e.g.*, *Cavanaugh v. City of Omaha,* 580 N.W.2d 541, 544 (Neb. 1998) (contract claim accrues at the time of breach).

Smart-Fill has simply not alleged any facts that, taken as true, permit the Court to reasonably infer that Jackson is using Smart-Fill information to develop his business. *See* filing 9 at 10. Nor has Smart-Fill has identified how a pharmacy benefits company, such as the one Jackson is developing, would be unlawfully competitive with its business, aside from Jackson's own allegation. *See generally* filing 9. And as explained below, those deficiencies are fatal to each of Smart-Fill's specific claims for relief.

### 1. BREACH OF CONTRACT

To recover for breach of contract, a plaintiff must plead and prove the existence of a promise, a breach of that promise, damages, and satisfaction of any conditions precedent to the defendant's duty to perform. *Henriksen v. Gleason*, 643 N.W.2d 652, 658 (Neb. 2002).

Here, Smart-Fill has pled the existence of the Confidentiality Agreement, and for purposes of this motion, Jackson does not challenge the validity of that agreement.₃ *See* filing 9 at 9; filing 12. Jackson breached that agreement, according to Smart-Fill, "on a number of occasions, in a number of ways," including disclosing its confidential information to third parties. Filing 9 at 10. But again, without at least a date, the Court cannot infer that Jackson disclosed any information to anyone in violation of the agreement. Smart-Fill also suggests that is has suffered and is suffering damages. However, Smart-

---

₃ Jackson's complaint requests a declaratory judgment and injunctive relief prohibiting Smart-Fill from enforcing the noncompete portion of the Confidentiality Agreement. *See* filing 1-1. But those issues are not presently before the Court.

Fill has not alleged with any particularity what damages those might be. *See* filing 9 at 10.

Smart Fill does not allege, for example, that Jackson has contacted its members or third party vendors, which would suggest that Jackson misused information or had begun competing with Smart-Fill. In short, Smart-Fill has alleged legal conclusions couched as factual allegations, and the Court need not accept them as true. *See Twombly*, 550 U.S. at 555. So, the Court concludes that Smart-Fill has not stated a claim for breach of the Noncompete Agreement and will grant Jackson's motion to dismiss that claim.

2. M<small>ISAPPROPRIATION OF</small> T<small>RADE</small> S<small>ECRETS</small>

Smart-Fill alleges that its confidential information constitutes trade secrets as defined by the Nebraska Trade Secrets Act, Neb. Rev. Stat. § 87-501 *et seq.* (TSA) and under common law. Filing 9 at 11. And it further alleges that Jackson's disclosure and use of the confidential information amounts to misappropriation under § 87-502(2).

Jackson argues that Smart-Fill's trade secrets claim should be dismissed because Smart-Fill has neither identified "trade secrets" as defined by law, nor alleged the efforts it has taken to protect the trade secrets. The Court agrees.

Under Nebraska statute, a "trade secret" is defined as information that:

(a) Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Neb. Rev. Stat. § 87-502(4). That definition is narrow; it means that "if an alleged trade secret is *ascertainable at all* by any means that are not 'improper,' the would-be secret is peremptorily excluded from coverage under the Act." *First Express Servs. Grp., Inc. v. Easter*, 840 N.W.2d 465, 474 (Neb. 2013) (emphasis in original) (citations and quotations omitted). At common law, "the subject matter of a trade secret must be *secret*, [] matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as its secret, and [] a trade secret is something known to only a few and not susceptible of general knowledge." *Richdale Dev. Co. v. McNeil Co.*, 508 N.W.2d 853, 859 (Neb. 1993).

So, for instance, in *Easter*, the Nebraska Supreme Court concluded that the Trade Secrets Act did not protect the customer list of a company that sold crop insurance, which included "customers' names and their 2009 information: what crops the farmers had, what counties the crops were located in, what insurance plan the farmers bought, what percentage of coverage each farmer had, and what commission [the insurer] had earned." *Id.* at 469. The court explained that "simple Internet searches could identify which farmers farmed what land and could provide contact information for those farmers." *Id.* at 475. And the other "information on the list essentially reflected the farmers' previous insurance coverage on their crops. It is undisputed that the individual farmers had all of that information and that [the defendant] could have obtained the information from them through a simple telephone call." *Id.* So, because the information on the customer list was ascertainable through proper means, the court concluded as a matter of law that it was not a trade secret. *Id.* at 476.

Jackson asserts that the Smart-Fill member lists and pricing information that Smart-Fill alleges was misappropriated is the same type of

- 8 -

readily attainable information as in *Easter*. *See* filing 12 at 7. The Court agrees. First, Smart-Fill just summarily alleges that its "customer information, product information, pricing information, financial information, sales data, research and development work, marketing strategies, Member lists and contact information, supply sources and resources, business models, and historical purchasing information on its Members," all amount to trade secrets. *See* filing 9 at 8, 11. And Smart-Fill may, within those very broad categories, have protectable trade secrets. But Smart-Fill alleges that Jackson sent himself and third-parties member lists and pricing information. Filing 9 at 10. And it has not alleged how that information would not be easily found through an internet search for pharmacies and then contacting those pharmacies in order to determine what they are paying for Smart-Fill membership. So, Smart-Fill's counterclaim fails to establish that either its member lists or pricing information constitute protectable trade secrets under statute or common law.

Jackson also contends that Smart-Fill failed to adequately protect its confidential information such that any trade secret protection would be extinguished. *See* filing 12 at 7. Again, the Court agrees. Smart-Fill conclusorily alleges it took "reasonable steps aimed to protect the confidentiality and to make sure [the] information is not" disclosed. *See* filing 9 at 9. But Jackson argues that he had "full access to the Smart-Fill confidential information," for the entirety of his 15-year career and was only in the last two months required to sign the Confidentiality Agreement. *See* filing 12 at 8; filing 9 at 9. And Smart-Fill provides no *facts* to support that it took reasonable steps to protect its information.

A complaint need not contain "detailed factual allegations," but Smart-Fill's allegations are not sufficiently specific to raise its right to relief "above

- 9 -

the speculative level." *See Twombly*, 550 U.S. at 555. Indeed, Smart-Fill's counterclaim for misappropriation of trade secrets constitutes a formulaic recitation of the elements and legal conclusions couched as factual allegations, which simply will not survive a motion to dismiss. *See id.* The Court will therefore dismiss this claim.

### 3. VIOLATION OF NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT

Smart-Fill claims that "by committing the acts set forth above [allegedly misappropriating confidential information and developing a pharmacy benefits company] [Jackson] has engaged in deceptive trade practices and a violation of Neb. Rev. Stat. § 87-302(a)." Filing 9 at 12. Section 87-302(a) has 22 subsections that outline deceptive trade practices. Smart-Fill has not identified which, if any, of the practices it alleges Jackson to be engaging in. Nor does it allege facts to support such a claim. Jackson correctly directs the Court's attention to these fatal flaws and argues that Smart-Fill's claim is a conclusory allegation that cannot survive a motion to dismiss. The Court agrees and Smart-Fill's claim for violation of the Trade Practices Act will be dismissed.

### 4. BREACH OF THE DUTY OF LOYALTY

According to Smart-Fill, Jackson's actions also amounted to a breach of the duty of loyalty. Jackson argues that Smart-Fill has not pled facts to show that his actions were competitive with Smart-Fill during his employment and so has not stated a claim. The Court agrees.

Under Nebraska law, it is a generally recognized principle that an employee owes a duty of loyalty to his employer during the course of his employment irrespective of the existence of a covenant not to compete or nonsolicitation clause. *W. Plains, L.L.C. v. Retzlaff Grain Co. Inc.*, 870 F.3d 774, 786 (8th Cir. 2017). To give rise to liability, the employee's disloyal conduct

must be so harmful as to substantially hinder the employer in the continuation of his business. *Id.* (quotation omitted). Such conduct might include soliciting customers of the employer or forming one's own competing business while still working for the employer. *Id.*

Smart-Fill suggests that Jackson's same actions—sending member list and pricing information to himself and third parties—breached his duty of loyalty. Filing 9 at 13. But the Court is not persuaded that Smart-Fill has alleged facts that come close to establishing a breach of that duty or the necessary hindrance to the continuation of its business. As stated above, Smart-Fill has not alleged facts that suggest that Jackson, during his employment or since termination, was actually competing, soliciting customers, damaging relationships with vendors, or doing *anything* that impacted Smart-Fill's business in any way. So, Smart-Fill's claim for breach of the duty of loyalty will likewise be dismissed.

### 5. UNJUST ENRICHMENT

Smart-Fill's final claim is for unjust enrichment. A person who obtains a benefit by conscious interference with a claimant's legally protected interests (or in consequence of such interference by another) is liable in restitution as necessary to prevent unjust enrichment. *Infogroup, Inc. v. Database, LLC*, 95 F. Supp. 3d 1170, 1197 (D. Neb. 2015) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 44); *see also United Gen. Title Ins. Co. v. Malone*, 858 N.W.2d 196, 232–13 (Neb. 2015) (adopting the Restatement (Third) view of unjust enrichment); *City of Scottsbluff v. Waste Connections of Nebraska*, 809 N.W.2d 725, 738–48 (Neb. 2011) (same). But the fact that a recipient has obtained a benefit without paying for it "does not itself establish that the recipient has been *unjustly* enriched." *Kalkowski v. Nebraska Nat'l Trails Museum Found., Inc.*, 862 N.W.2d 294, 301-02 (Neb. 2015) (emphasis

added) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2, comment a. (2011)). Rather, to state a viable claim, the benefit conferred must be "something in which the claimant has a legally protected interest, and it must be acquired or retained in a manner that the law regards as unjustified." Restatement (Third) of Restitution and Unjust Enrichment § 2, comment a. (2011).

The Court, in applying these principles to the facts of this case, will grant Jackson's motion to dismiss. For the reasons set forth above, Smart-Fill's member lists and pricing information have not been shown to be legally protected trade secrets. Nor does the counterclaim allege facts which would allow the Court to infer that Jackson has *retained* any information of Smart-Fill's in a manner that is unjustified. The Court therefore will grant Jackson's motion to dismiss as to Smart-Fill's claim for unjust enrichment.

## IV. CONCLUSION

Smart-Fill's counterclaims recite the elements of its claims without providing factual support. *See Twombly*, 550 U.S. at 555. Smart-Fill's counterclaims will therefore be dismissed for failure to state a claim.

In its brief, Smart-Fill requests "leave to amend it's [sic] counterclaim consistent with any findings of the Court." Filing 16 at 9. But Smart-Fill could have amended its pleading as of right in response to Jackson's motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B). It also could have filed a motion for leave to amend, and attached a proposed amended pleading with additional facts. *See* Rule 15(a)(2). Smart-Fill has not done either, to date.

A district court in granting a motion to dismiss is not obliged to invite a motion for leave to amend if the non-moving party did not file one. *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 742 (8th Cir. 2014); *see Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 880 (8th Cir. 2015); *Gomez v.*

*Wells Fargo Bank, N.A.*, 676 F.3d 655, 665 (8th Cir. 2012); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009); *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985). If Smart-Fill wants to amend its pleading, it may seek leave to do so as provided by Rule 15(a)(2) and NECivR 15.1.

IT IS ORDERED:

1. Jackson's motion to dismiss Smart Fill's counterclaim (filing 11) is granted.

2. Smart-Fill's counterclaims (filing 9) are dismissed.

3. Smart-Fill is terminated in its role as a counterclaimant and Jackson is dismissed in his role as a counterclaim defendant.

Dated this 8th day of July, 2020.

BY THE COURT:

John M. Gerrard
Chief United States District Judge